**In re ARROW HUSS, INC., a Delaware corporation, Debtor.**

**Bankruptcy No. 84C–03187.**

United States Bankruptcy Court,
D. Utah.

Aug. 1, 1985.

Noel S. Hyde, Nielsen & Senior, Salt Lake City, Utah, for debtor.

## MEMORANDUM OPINION

GLEN E. CLARK, Bankruptcy Judge.

### FACTUAL AND PROCEDURAL BACKGROUND

The debtor, Arrow Huss, Inc., is engaged in the design, manufacture, sale and maintenance of amusement rides. The debtor was incorporated in 1981 and is a leader in that industry. The debtor suffered substantial financial losses on attractions constructed for the 1984 New Orleans World Fair as a result of unexpectedly low visitor attendance.

On November 20, 1984, an involuntary Chapter 11 petition was filed against the debtor and an order for relief was entered on December 18. Prior to the filing of the involuntary petition, several officers and employees of the debtor incurred debts on behalf of the debtor, including credit card charges for corporate business expenses, medical expenses to be paid through the company's employee benefit plan, and travel and moving expenses incurred at the request of the debtor. The debtor acknowledges liability for these claims.

After entry of the order for relief, credit card companies began contacting several officers and employees requesting payment of the charges from them individually. On January 11, 1985, the debtor filed a motion to extend the protection of the automatic stay to its present officers and employees with respect to claims which might be asserted against them individually, and requested a hearing on five days notice to all creditors and parties in inter-

est.[1]  The Court entered an order reducing the time for notice and the matter was heard on January 17, 1985.

At the hearing, the debtor's attorney made a proffer that if the officers and employees were required to defend against these collection actions, some would terminate their employment with the debtor and others would be unable to devote the necessary time and attention to the reorganization effort.[2]  Counsel argued that without injunctive relief, the debtor's attempts to reorganize under Chapter 11 would be severely jeopardized.  No creditor appeared in opposition to the motion.

The Court was concerned about the limited notice and the breadth of the injunction sought, but believed the debtor made a sufficient showing of hardship to justify temporary relief.  Accordingly, the Court determined that collection efforts on the above-described obligations against present officers and employees of the debtor should be enjoined for a period of 45 days. But the injunction was subject to being vacated or modified within that time upon motion of a party in interest, and any extension of the injunction beyond 45 days would require a further evidentiary hearing on 20 days notice to parties in interest.

The exigent circumstances of the case required that the Court rule from the bench, but the Court reserved the right to issue a memorandum opinion elaborating upon the basis for its ruling.

## DISCUSSION

This proceeding presents a problem often found in Chapter 11 cases.  Because the creditor cannot reach the debtor who is protected by the automatic stay, it proceeds against the principals of the debtor who stand as guarantors, co-obligors, or sureties.  Those individuals must divert their energies from the reorganization effort to defending themselves in the litigation.  The principal question to be decided is whether and to what extent the bankruptcy court may exercise its injunctive

---

1. At the hearing, the issue of whether the Court's jurisdiction was properly invoked was neither raised nor considered.  Bankruptcy Rule 7001(7) provides that a proceeding "to obtain an injunction or request other equitable relief" is an adversary proceeding governed by Part VII of the Bankruptcy Rules, and must be commenced by filing a complaint.  *See* Bankruptcy Rule 7003; *In re Sondra, Inc.,* 44 B.R. 205, 206 n. 1 (Bkrtcy.E.D.Pa.1984) (proceeding to stay creditor action against one of the debtor's principals should have been commenced by filing a complaint, but because motion was not objected to on that basis and in the interest of justice, motion for stay would be treated as complaint for injunctive relief); *In re Brookfield Tennis, Inc.,* 29 B.R. 1, 2 (Bkrtcy.E.D.Wis.1982) (Chapter 11 debtor's motion to enjoin action against its officers failed to properly invoke the jurisdiction of the bankruptcy court).  *Cf. In re Riding,* 44 B.R. 846, 12 B.C.D. 635, Bankr.L.Rep. (CCH) ¶ 70,173, 11 C.B.C.2d 859 (Bkrtcy.D.Utah 1984) (proceeding to compel turnover is an adversary proceeding which must be initiated by filing a complaint).

There is no question that these actions against nondebtor co-obligors are "related to" the debtor's Chapter 11 case.  *In re Johnie T. Patton, Inc.,* 12 B.R. 470, 471 (Bkrtcy.D.Nev.1981). *See In re Jon Co., Inc.,* 30 B.R. 831, 834 (D.C.D. Colo.1983) (action to enjoin IRS from collecting 100% penalty against Chapter 11 debtor's officers and directors for failure to collect and pay over employment-related taxes, which interfered with the debtor's reorganization efforts, is "related to" a case under Title 11 and within the court's jurisdiction).  Bankruptcy judges may hear and determine all "core" proceedings "arising under" Title 11, or "arising in a case" under Title 11, but may not enter dispositive orders in "related" proceedings without the consent of the parties.  28 U.S.C. § 157(b)(1), (c)(1) and (2). Although "related to" jurisdiction exists to enjoin actions against nondebtors where necessary to prevent substantial interference with the reorganization process, *see In re Keyco, Inc.,* 49 B.R. 507, 13 B.C.D. 25, 27 (Bkrtcy.E.D.N.Y.1985) (collecting cases), a bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court, and any final order must be entered by the district judge.  28 U.S.C. § 157(c)(1); Rule B–108, District Court Rules of Bankruptcy Practice and Procedure (Utah).

2. *Cf. In re Johns-Manville Corp.,* 26 B.R. 420, 426 (Bkrtcy.S.D.N.Y.1983), *aff'd,* 40 B.R. 219 (S.D.N.Y.1984), *rev'd in part,* 41 B.R. 926, 12 B.C.D. 275 (S.D.N.Y.1984) in which the court found that "the massive drain on [Manville's key operating personnel's] time and energy at this critical hour of plan formulation in either defending themselves or in responding to discovery requests could frustrate if not doom their vital efforts at formulating a fair and equitable plan of reorganization."

power under Section 105(a),[3] in effect, to extend the protection of the automatic stay to the debtor's officers and employees during the pendency of a Chapter 11 case.

█ It is well settled that Section 362 of the Bankruptcy Code, which stays actions against the debtor and against property of the estate, does not forbid actions against its nondebtor principals, partners, officers, employees, co-obligors, guarantors, or sureties.[4] The legislative history shows that Congress may have considered the issue of a general stay of actions against guarantors in reorganization cases,[5] but apparently rejected such a blanket stay and limited co-debtor stays to Chapter 13. *See* 11 U.S.C. § 1301. As enacted, Chapter 11 contains no specific provision authorizing stays against nondebtor codefendants.[6] Therefore, the sole statutory basis for the issuance of an injunction against these collection efforts is Section 105.[7] Under this provision, bankruptcy courts have used the injunctive power to provide temporary protection to co-obligors during the pendency of a Chapter 11 case. *See, e.g., In re Equity Funding Corp. of America,* 396 F.Supp. 1266 (C.D.Cal.1975) (enjoining actions against the debtor's wholly-owned subsidiaries, which would frustrate the ability of the court to reorganize the debtor or proceed with the plan of reorganization); *In re Otero Mills, Inc.,* 21 B.R. 777 (Bkrtcy.D.N.M.) *aff'd,* 25 B.R. 1018, 9 B.C.D. 1400 (D.C.D.N.M.1982) (creditor temporarily enjoined from foreclosing against property of the debtor's president in execution of judgment arising from personal guaranties of debtor's promissory

---

**3.** Section 105(a) provides:

The court may issue any order, or judgment that is necessary or appropriate to carry out the provisions of this title.

**4.** *See, e.g., Otoe County National Bank v. W & P Trucking, Inc.,* 754 F.2d 881, 883 (10th Cir.1985); *Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1330 (10th Cir.1984); *Globe Construction Co. v. Oklahoma City Housing Authority,* 571 F.2d 1140, 1143 (10th Cir.), *cert. denied. General Insurance Co. of America v. Oklahoma City Housing Authority,* 439 U.S. 835, 99 S.Ct. 117, 58 L.Ed.2d 131 (1978); *Pitts v. Unarco Industries, Inc.,* 698 F.2d 313, 314, 10 B.C.D. 131 (7th Cir. 1983); *Lynch v. Johns-Manville Sales Corp.,* 710 F.2d 1194, 1196–97, 10 B.C.D. 1282, 1284 (6th Cir.1983); *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 544, 10 B.C.D. 1272 (5th Cir.1983); *Williford v. Armstrong World Industries, Inc.,* 715 F.2d 124, 126–27, 11 B.C.D. 642 (4th Cir. 1983); *In re Magnus Harmonica Corp.,* 233 F.2d 803, 804 (3rd Cir.1956); *Stoller v. Baldwin-United Corp.,* 41 B.R. 884, 890 (S.D.Ohio 1984); *Neubauer v. Owens-Corning Fiberglas Corp.,* 26 B.R. 644, 646 (E.D.Wis.), *cert. denied* 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983); *In re Related Asbestos Cases,* 23 B.R. 523, 528–29 (N.D.Cal.1982); *Lynch v. Johns-Manville Sales Corp.,* 23 B.R. 750, 751 (D.C.S.D.Ohio 1982), *aff'd* 710 F.2d 1194, 10 B.C.D. 1282 (6th Cir. 1983); *In re Aboussie Brothers Construction Co.,* 8 B.R. 302, 303, 7 B.C.D. 309 (D.C.E.D.Mo.1981); *Royal Truck & Trailer, Inc. v. Armadora Maritima Salvadorena, S.A.,* 10 B.R. 488, 491 (D.C.N.D.Ill.1981); *McGinnis Lumber Co., Inc. v. Belser,* 385 F.Supp. 390 (D.C.D.S.C.1974); *Teledyne Industries, Inc. v. Eon Corp.,* 373 F.Supp. 191, 203 (S.D.N.Y.1974).

**5.** In his testimony before the Subcommittee on Improvements in Judicial Machinery of the Senate Judiciary Committee, Stanford Lerch stated:

I feel there should be some protection built into any act that may at least stay a secured creditor from proceeding against those parties that have personally guaranteed the debt if those parties are personally involved in the rehabilitation effort.

*Hearings on S. 2266 and H.R. 8200 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary,* 95th Cong., 1st Sess. 518–19 (1977).

**6.** Section 1481 of the Judicial Code may have given bankruptcy courts the equitable power to stay actions against codefendants. *See In re Larmar Estates, Inc.,* 5 B.R. 328, 6 B.C.D. 711 (Bkrtcy.E.D.N.Y.1980). That provision conferred to bankruptcy courts the powers of a court of equity, law, and admiralty. 28 U.S.C. § 1481. However, Section 1481 was repealed by Section 113 of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 343 (July 10, 1984).

**7.** The predecessor of Section 105 was Section 2a(15) of the former Bankruptcy Act, 11 U.S.C. § 11(a)(15) (repealed). H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 316 (1977), 1978 U.S.Code Cong. & Admin.News, p. 6273. Though Section 105 was intended, in part, to give the bankruptcy court the means to protect its expanded jurisdiction, the several decisions applying Section 2a(15) to co-debtor injunctions remain useful as precedents. *See, e.g., In re Magnus Harmonica Corp., supra,* 233 F.2d at 803; *Matter of Equity Funding Corp. of America, supra,* 396 F.Supp. at 1266.

notes); *In re Original Wild West Foods, Inc.*, 45 B.R. 202, 11 C.B.C.2d 1447 (Bkrtcy. W.D.Texas 1984) (IRS enjoined from collecting 100% tax penalty for unpaid prepetition withholding and employment taxes from an officer, director and shareholder of the Chapter 11 debtor); *In re Lion Capital Group*, 44 B.R. 690 (Bkrtcy.S.D.N.Y.1984) (bankruptcy court enjoined continuation of fraud-based suits brought by limited partners against principals, parent companies and general partners involved with the debtor's Chapter 11 case); *In re Sondra, Inc., supra*, 44 B.R. at 205 (bankruptcy court lacks jurisdiction to stay creditor from state court action against one of the debtor's principals unless it finds that failure to enjoin would detrimentally affect the estate and would adversely pressure the debtor through that principal); *In re Ms. Kipps, Inc.*, 34 B.R. 91 (Bkrtcy.S.D.N.Y. 1983) (bankruptcy court enjoined union from state court action against the debtor's president for failure to make employee benefit contributions where the action was inextricably intertwined with claims against the debtor, and the president would be detracted from his efforts to operate and rehabilitate the debtor's business); *In re Johns-Manville Corp., supra*, 26 B.R. at 420 (bankruptcy court temporarily stayed all suits and discovery requests against 25 key officers, directors, employees and agents who are essential to plan formation and reorganization); *Matter of Johns-Manville Corp.*, 26 B.R. 405, 416 (Bkrtcy.S.D.N.Y.1983) *aff'd* 40 B.R. 219 (D.C.S.D.N.Y. 1984) (Section 105 permits bankruptcy court to enjoin creditor's action against third party co-debtor or guarantor where proper showing is made); *In re Comtek Electronics, Inc.*, 23 B.R. 449 (Bkrtcy.S.D. N.Y.1982) (bankruptcy court lifted preliminary injunction and allowed bank to proceed with state court action against non-debtor guarantor of promissory notes); *In re Landmark Air Fund II*, 19 B.R. 556, 9

B.C.D. 3 (Bkrtcy.N.D.Ohio 1982) (bankruptcy court declined to enjoin bank from foreclosing on assets of the debtor's general partners to enforce judgment where the debtor intended to liquidate rather than reorganize); *First Federal Savings & Loan Association v. Pettit*, 12 B.R. 147, 7 B.C.D. 731 (E.D.Ark.1981) (affirming an order enjoining action against the debtor's mother-in-law and her husband who co-signed mortgage and promissory note on a personal residence where "such an action might place pressure on the bankrupt and ultimately affect the proposed reorganization"); *In re Larmar Estates, Inc.*, 5 B.R. 328, 6 B.C.D. 711 (Bkrtcy.E.D.N.Y.1980) (bankruptcy court permitted FDIC to enforce state court judgment against individual guarantors where guarantors could not show that action would impair the debtor's chances for successful reorganization).

In extraordinary cases, and under limited circumstances, the exercise of this power is necessary and appropriate to effect the objectives of Chapter 11. "In order for a beleaguered debtor to prepare a proposed plan of reorganization, it may be necessary to protect the codebtor principals of the debtor from their creditors in order to allow them time to do the necessary work." *In re A.J. Mackay Company*, 50 B.R. 756 (D.Utah 1985) (dictum). *Cf.*, 2 COLLIER ON BANKRUPTCY ¶ 362.05, at 362–37 (15th ed. 1985) (under Section 105 the court has ample power to enjoin action excepted from the automatic stay which might interfere with the rehabilitative process.) [8]

In *In re Johns-Manville Corp., supra*, 26 B.R. at 420, the best known of this line of cases, Judge Lifland extended the protection of the automatic stay to prohibit the continued litigation, including discovery, against all employees and executives of Manville. The propriety of this stay was upheld by the district court in *In re Johns-Manville, supra*, 40 B.R. at 219, and by the

---

**8.** In *In re Terracor, Inc.*, No. 81–00599, transcript of ruling (Bkrtcy.D.Utah Oct. 28, 1981), this Court previously exercised its power under Section 105 to stay proceedings against the principals and key employees of the debtor who

were integrally involved in the preparation of the debtor's very complex Chapter 11 plan. The stay in that case prohibited the continuation of litigation commenced in the Central District of Minnesota until the plan was confirmed.

Fifth Circuit in *In re Davis,* 730 F.2d 176 (5th Cir.1984). The debtor's motion in this case appears to have been patterned after the one in *Johns-Manville.*

■■■ From the courts which have considered the question, no clear guidelines have emerged that may be applied in deciding whether to grant this extraordinary type of relief. *See generally,* "Case Study: Trio of Cases Illustrate Current Scope of Injunctive Relief Freezing Creditor Action Against Nondebtors," *Broken Bench Review,* Vol. 4, No. 3, pp. 17–22 (March, 1985). Clearly, something more than the mere fact that one codefendant has filed a Chapter 11 petition must be shown in order to warrant a stay of proceedings against a nondebtor codefendant. *Royal Truck & Trailer, Inc. v. Armadora Maritima Salvadorena, S.A., supra,* 10 B.R. at 491.[9] If the litigation against the nondebtor merely has an indirect or insignificant effect on the reorganization, a stay is likewise unwarranted. *See In re Magnus Harmonica Corp., supra,* 233 F.2d at 803. The power to prevent creditors from proceeding against nondebtors must only be used in extraordinary cases, and not simply to "assist" the debtor in reorganizing or to relieve general "pressure" on the debtor. *In re A.J. Mackay Company, supra.*

■■■ Several courts have applied the four-part test for issuance of an injunction under Rule 65 of the Federal Rules of Civil Procedure. *See, e.g., In re Anje Jewelry Co., Inc.,* 47 B.R. 485, 487 (Bkrtcy.E.D.N.Y. 1983); *In re Johns-Manville Corp.,* 33 B.R. 254, 262, 11 B.C.D. 1002 (Bkrtcy.S.D.N.Y. 1983); *In re Otero Mills, supra,* 21 B.R. at 777; *In re Landmark Air Fund II, supra,* 19 B.R. at 559. Those four prerequisites which the moving party must establish are:

(1) Substantial likelihood that the movant will eventually prevail on the merits;

(2) A showing that the movant will suffer irreparable injury unless the injunction issues;

(3) Proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and

(4) A showing that the injunction, if issued, would not be adverse to the public interest.

*Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980).

In the civil litigation context, the probability-of-success on the merits requirement is generally relaxed somewhat where irreparable injury is threatened and the balance of hardships tips in favor of the movant. "[I]t will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Community Communications v. City of Boulder,* 660 F.2d 1370, 1375–76 (10th Cir.1981), *cert. dismissed* 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982), quoting *Lundgrin v. Claytor, supra,* 619 F.2d at 63. *See William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86, 88 (9th Cir.1975). In the context of this proceeding, however, likelihood of success on the merits is usually defined as the probability of successfully effectuating a plan of reorganization. *In re Otero Mills, Inc., supra,* 21 B.R. at 779, and cases cited therein. *Contra, In re Lion Capital Group, supra,* 44 B.R. at 704 n. 7. Some cases have found the irreparable harm requirement met where failure to enjoin the creditor would adversely or detrimentally influence or pressure the debtor through the nondebtor. *See Matter of Johns-Manville Corp., supra,* 26 B.R. at 416–17; *In re Otero Mills, Inc., supra,* 21 B.R. at 778. *See also First Federal Savings & Loan Association v. Pettit, supra,* 12 B.R. at 149.

■■■ In this Court's view, the injunction factors, while furnishing a context for the Court's inquiry should not end it. A great-

**9.** *Cf. Gold v. Johns-Manville Sales Corp.,* 723 F.2d 1068, 1076 (3d Cir.1983); *In re Related Asbestos Cases, supra* note 4, 23 B.R. at 530 (a Chapter 11 debtor which is a potential joint tortfeasor is not an indispensable party).

er refinement in definition is called for. Relevant considerations, as distilled from case law, include the following:

(1) Whether continuation of the litigation against the nondebtor would frustrate the ability of the debtor to develop and go forward with its plan of reorganization.[10]

(2) Whether the debtor is close to having a confirmable plan that will fully satisfy the affected creditor's claims.[11]

(3) Whether the nondebtors' continuing efforts on behalf of the debtor are essential to prepare and carry out the provisions of the plan.[12]

■ The movant's burden of proof is a heavy one and must be supported by substantial evidence, the quantum of which will necessarily vary depending on the scope and duration of the stay sought. The movant must make out a clear showing of hardship and adverse impact on the reorganization case if there is even a fair possibility that the stay will prejudice an adverse party. *Cf. Landis v. North American Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). It is therefore not surprising that injunctions to protect nondebtor co-obligors are seldom granted by this Court.

■ Turning to the facts of this case, the Court concludes that the movant's proffer, in light of the absence of opposition to the motion, was adequate to warrant the imposition of a stay of very limited duration.[13] This is a fairly large Chapter 11 case and the debtor's key officers and employees should be free at this early stage to devote their efforts to continuing the operation of the business and the formulation of a plan, unhampered by the threat of personal litigation.

## CONCLUSION

■ The power to temporarily enjoin litigation against nondebtor principals of a corporate Chapter 11 debtor during the pendency of the reorganization case is a valid and useful exercise of Section 105. Used sparingly and judiciously, it protects the integrity of the reorganization process by restraining serious interference with the administration of the estate. The judicial discretion to enter a stay under Section 105, however, is susceptible to abuse. The burden is on the debtor to clearly establish the necessity for injunctive relief. This will ordinarily require convincing evidence of an adverse impact on the debtor's estate which seriously threatens the debtor's ability to formulate and carry out a plan of reorganization. In view of these considerations and on the facts of this case, the Court believes that creditors should be restrained and enjoined from attempting to collect the above-described debts from the debtor's officers and employees for a period of 45 days.

---

10. See In re Jon Co., Inc., supra, 30 B.R. at 834; Matter of Equity Funding Corp. of America, supra, 396 F.Supp. at 1266; First Federal Savings & Loan Association v. Pettit, supra, 12 B.R. at 147; Matter of Elemar Associates, 3 B.C.D. 958 (Bkrtcy.S.D.N.Y.1977); In re Brada Miller Freight System, Inc., 8 B.R. 61 (Bkrtcy.N.D.Ala. 1980), vacated 16 B.R. 1002 (N.D.Ala.1981), aff'd 702 F.2d 890, 10 B.C.D. 804 (11th Cir.1983); In re Sondra, Inc., supra, 44 B.R. at 207.

11. See In re Larmar Estates, Inc., supra, 5 B.R. at 328.

12. See In re Johns-Manville Corp., 40 B.R. 219 (S.D.N.Y.1984); Matter of Old Orchard Investment Co., 31 B.R. 599, 10 B.C.D. 1200 (W.D. Mich.1983); In re Otero Mills, Inc., 25 B.R. 1018 (D.N.M.1982).

13. At the beginning of a Chapter 11 case, the Court often must work with less evidence than might be desirable, and will resolve doubts in favor of the reorganization. See In re Otero Mills, Inc., supra, 25 B.R. at 1022.